UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 16-20827

        v.        District Judge Arthur J. Tarnow

JERMAINE READUS,

        Defendant.
_____/

**MOTION FOR JUDICIAL RECOMMENDATION
FOR HOME CONFINEMENT UNDER THE CARES ACT**

    Jermaine Readus, through counsel, moves for a judicial recommendation to home confinement under the CARES Act. In support he states:

    1.    In September 2017, this Court sentenced Mr. Readus to 60 months in prison, the mandatory minimum, for gun possession and drug distribution.

    2.    Mr. Readus has less than two years left on his sentence.

    3.    Mr. Readus is severely obese, putting him at high risk of death from COVID-19. At sentencing, his height was 5'9" with a weight of 350 pounds. PSR ¶ 43. This represents a body mass index (BMI) of more than 50. According to the Centers for Disease Control and Prevention, anyone with a BMI of 40 or higher are at higher risk for severe illness from COVID-19. CDC.gov, Coronavirus Disease

1

2019, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

4. Mr. Readus also suffers sleep apnea and high blood pressure. PSR ¶ 44. Sleep apnea causes a person to stop breathing while sleeping. It can be deadly if not treated properly. Mr. Readus uses a CPAP (Continuous Positive Airway Pressure) machine when he sleeps. Because COVID-19 is a respiratory illness, his sleep apnea is cause for additional concern. Furthermore, people like Mr. Readus with high blood pressure "may face an increased risk for severe complications if they get the virus." Am. Heart Ass'n Guidance, https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19.

5. This month, in light of the COVID-19 global pandemic and escalating death toll, medical professionals have advised inmates should be released urgently to avoid catastrophic spread of the disease. Those inmates who suffer respiratory disorders and obesity, like Mr. Readus, are at particular risk.

6. On March 27, 2020, Congress enacted the CARES Act, which gives the BOP additional authority to place vulnerable inmates on home confinement in response to the COVID-19 pandemic if the Attorney General declares an emergency. "On April 3, the Attorney General exercised emergency authority under the CARES Act, to further increase Home Confinement." BOP.gov, *Update on COVID-19 and*

*Home Confinement*, https://www.bop.gov/resources/news/20200405_ covid19_home_confinement.jsp.

7. On March 24, only 3 federal inmates had tested positive for COVID-19. But now, as of April 7, 2020, at least 241 federal inmates have tested positive for COVID-19, and tragically, 8 inmates have died. BOP.gov, COVID-19 Cases, https://www.bop.gov/coronavirus/. This is an unprecedented crisis, and these numbers are undoubtedly underreported, given that the BOP does not have adequate resources to test inmates. Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in Prison*, FORBES, Apr. 1, 2020, https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#70bd2d4c7ba3.

8. Mr. Readus is not a danger if released on home confinement. He reports that, although he is at a medium security prison, his security points have dropped to a point where he is eligible for transfer to a low-security institution. This transfer has been delayed because the coronavirus outbreak. Mr. Readus does not have a violent history. Moreover, he complied with bond for more than eight months during the pendency of his case, and this Court permitted him self-surrender. Mr. Readus was arrested on state allegations shortly before voluntarily surrendering, but those state charges were dropped. He has no detainers. Mr. Readus has a place to live with his

3

mother—and this residence has been vetted because he resided there while on bond during the pendency of his case.

9. In another case before this Court, the government recognized that the BOP, in reviewing inmates for placement on home confinement, is taking judicial recommendations into account. *See United States v. Doshi*, Cr. No. 13-20349, Gov. Update, Dkt. 146 (E.D. Mich. Apr. 3, 2020).

10. Defense counsel spoke to government counsel about this matter. Government counsel recalled Mr. Readus's medical issues. He stated that he does not take a position on this motion. Rather, he would leave this matter to the discretion of the Court and the Bureau of Prisons.

Mr. Readus asks for a judicial recommendation for home confinement.

Respectfully Submitted,

FEDERAL DEFENDER OFFICE

s/Benton C. Martin
benton_martin@fd.org
Attorney for Jermaine Readus
613 Abbott St., 5th Floor
Detroit, MI 48226
Phone: 313-967-5832

Date: April 8, 2020

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,           Cr. No. 16-20827

        v.                   District Judge Arthur J. Tarnow

JERMAINE READUS,

        Defendant.

_____/

## BRIEF IN SUPPORT OF MOTION FOR JUDICIAL RECOMMENDATION

### Background on COVID-19

The emerging consensus among public health experts is that it is absolutely critical to reduce incarceration in order to contain the spread of this virus. *See* Ex. A, Beyrer Decl. COVID-19 is a viral respiratory illness caused by a novel coronavirus first identified, in Hubei Province, China, in December 2019. Since its discovery in Wuhan, cases of COVID-19 have spread to over 114 countries. The virus is spreading exponentially. Overall, "each newly infected person is estimated to infect on average 3 additional persons." Beyrer Dec. ¶ 10. Since January 2020, COVID-19 has spread widely in the United States. It has now been detected in 49 states, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands.

1

COVID-19 is an extremely dangerous disease. The best estimate for its overall fatality rate—i.e., its fatality rate among all demographics—is 0.3-3.5%, "which is 5-35 times the fatality associated with influenza infection." Beyrer Dec. ¶ 5.

### Home Confinement and the CARES Act

Under § 12003(b)(2) of the CARES Act, "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." On April 3, 2020, Attorney General Barr issued a memo directing the BOP to "immediately maximize appropriate transfers to home confinement." Attorney General Memorandum for Director of Bureau of Prison, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Apr. 3, 2020, *available at* https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000.

18 U.S.C. § 3621(b) gives the BOP a list of factors to consider when determining where to house an incarcerated person, their security designation, and their mental and medical needs. One of the factors is "any statement by the Court that imposed the sentence – (A) concerning the purposes for which the sentence to

2

imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate[.]" 18 U.S.C. § 3621(b)(4). In another case before this Court, the government recognized that the BOP, in reviewing inmates for placement on home confinement under the CARES Act, is taking revised judicial recommendations into account. *See United States v. Doshi*, Cr. No. 13-20349, Gov. Update, Dkt. 146 (E.D. Mich. Apr. 3, 2020).

### **Why a Judicial Recommendation is Appropriate in Mr. Readus's Case**

In September 2017, this Court sentenced Mr. Readus to 60 months in prison, the mandatory minimum, for gun possession and drug distribution. In imposing the original sentence, this Court recommended Mr. Readus be housed at FCI Milan and permitted to complete RDAP and educational and vocational programs.

Mr. Readus now has less than two years left on his sentence. Although he is at a medium security prison, his security points have dropped to a point where he is eligible for transfer to a low-security institution. This transfer has been delayed because the coronavirus outbreak.

Mr. Readus is severely obese, putting him at high risk of death from COVID-19. At sentencing, his height was 5'9" with a weight of 350 pounds. PSR ¶ 43. This represents a body mass index (BMI) of more than 50. According to the Centers for Disease Control and Prevention, anyone with a BMI of 40 or higher are at higher

3

risk for severe illness from COVID-19. CDC.gov, Coronavirus Disease 2019, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Mr. Readus also suffers sleep apnea and high blood pressure. PSR ¶ 44. Sleep apnea is a disorder where a person stops breathing periodically while sleeping. It can be deadly if not treated properly. He uses a C-PAP (Continuous Positive Airway Pressure) machine when he sleeps. Because COVID-19 is a respiratory illness, this disease raises a concern if he were to contract COVID-19. In addition, those with high blood pressure "may face an increased risk for severe complications if they get the virus." American Heart Association Guidance, https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19.

This month, in light of the COVID-19 global pandemic and escalating death toll, medical professionals have advised inmates should be released urgently to avoid catastrophic spread of the disease. Those inmates who suffer pre-existing conditions such as respiratory disorders and obesity, like Mr. Readus, are at particular risk.

On March 24, only 3 federal inmates had tested positive for COVID-19. Since then, the spread of the disease has been exponential. As of April 7, 2020, at least 241 federal inmates have tested positive for COVID-19, and tragically, 8 inmates have

4

died. BOP.gov, COVID-19 Cases, https://www.bop.gov/coronavirus/. These numbers are undoubtedly underreported, given that the BOP does not have adequate resources to test inmates. Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in Prison*, FORBES, Apr. 1, 2020, https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#70bd2d4c7ba3.

As this Court acknowledged in a similar case, "the public safety rationale paramount in sentencing militates towards [the defendant]'s quick transfer to home confinement." *United States v. Doshi*, Cr. No. 13-20349, Order Granting Motion for Recommendation, Dkt. 145, at PgID 971 (E.D. Mich. Mar. 31, 2020). "[T]he high density of prison populations makes federal prisons ideal transmission grounds for the virus." *Id.* at 971–72 (citing Kimberly Kindy, *An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana*, THE WASHINGTON POST (March 29, 2020), https://www.washingtonpost.com/national/an-explosion-ofcoronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html).

Further, district courts are increasingly recognizing "'the health risks—to inmates, guards, and the community at large—created by large prison populations.'"

5

*Id.* at 971 (quoting *United States v. Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (collecting cases).

Mr. Readus is not a danger if released on home confinement. He does not have a violent history. He complied with bond for more than eight months during the pendency of his case, and this Court permitted him self-surrender. Mr. Readus was arrested on state allegations shortly before voluntarily surrendering, but those state charges were dropped. He has no detainers. Mr. Readus has a ready place to live with his mother. Her residence was vetted by pretrial services as part of his initial case because he resided there while on bond during the pendency of his case.

## Conclusion

Jermaine Readus respectfully asks this Court for a judicial recommendation to home confinement.

Respectfully Submitted,

FEDERAL DEFENDER OFFICE

s/Benton C. Martin
benton_martin@fd.org
Attorney for Jermaine Readus
613 Abbott St., 5th Floor
Detroit, MI 48226
Phone: 313-967-5832

Dated: April 8, 2020

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 16-20827

        v.        District Judge Arthur J. Tarnow

JERMAINE READUS,

        Defendant.
_____/

## **CERTIFICATE OF SERVICE**

    I certify that on April 8, 2020, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.

                                  */s/Benton C. Martin*