UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JERMAINE READUS,

    Defendants.

_____/

Case No. 16-20827-1

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [28]**

On April 11, 2020, the Court granted Plaintiff's unopposed Motion for a Judicial Recommendation for Home Confinement. (ECF No. 23). The Bureau of Prisons declined to transfer him to home confinement, however. Readus now moves for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 28). For the reasons explicated below and on the record of the May 18, 2020 hearing, this motion will be granted.

### BACKGROUND

Readus was indicted on December 15, 2016 on three counts. The Magistrate Judge ordered him detained pending trial, but he successfully appealed the detention order and was released on a $10,000 unsecured bond on February 21, 2017. (ECF No. 15). On April 13, 2017, Readus pleaded guilty to Counts 1 and 2 of the

indictment: Conspiracy to Possess with Intent to Distribute and to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 18). The Court sentenced him to the mandatory minimum of 60 months (five years) on September 14, 2017. (ECF No. 21). His projected release date is March 2, 2022.

Readus is incarcerated at FCI McKean, a medium-security facility in West Virginia. On April 8, 2020, he moved the Court, unopposed, to issue a judicial recommendation that he be transferred to home confinement. (ECF No. 22). On April 11, 2020, the Court granted the motion and recommended that the BOP transfer Readus to home confinement and file a written explanation of their rationale if they did not. (ECF No. 23). The BOP declined to transfer Readus, and they filed a notice of their decision on April 16, 2020. (ECF No. 24).

Readus petitioned the BOP for compassionate release in early April, and his petition was denied on April 15, 2020. (ECF No. 32-5). Readus moved for compassionate release on May 8, 2020. (ECF No. 26, 28). The Government responded on May 15, 2020. (ECF No. 29). Readus filed a Reply that same day. (ECF No. 32). A hearing was held on May 18, 2020.

## ANALYSIS

Readus moves for compassionate release. The applicable statute reads as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction;

18 U.S.C.A. § 3582.
!

There is no dispute that Readus has exhausted his administrative remedies. The Court thus has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether Defendant poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. Extraordinary and Compelling Reasons

As for the first question, the Compassionate Release statute directs courts to consider the United States Sentencing Guidelines. U.S.S.G. 1B1.13 provides several qualifying elements of the "extraordinary and compelling reasons" for a sentence reduction. Only the first one—the medical condition of the Defendant—is relevant to this motion.

> **(A) Medical Condition of the Defendant.--**
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(ii)** The defendant is--
> **(I)** suffering from a serious physical or medical condition,
> **(II)** suffering from a serious functional or cognitive impairment, or
> **(III)** experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13

The compelling logic of the pandemic response has forced institutions at every level of society to adapt in extraordinary ways. For prisoners with preexisting conditions, COVID-19 is too often fatal. Unsurprisingly then, many courts, including this one, have held that preexisting conditions that put a prisoner at danger from COVID-19 qualify as "extraordinary and compelling." A serious physical or medical condition from which a defendant is not expected to recover—in combination with a rapidly transmittable virus that thrives in institutional settings— diminishes a defendant's ability to provide self-care. *Amarrah*, 2020 WL 2220008 at *6; *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *6 (E.D. Mich. May 5, 2020); *Miller v. United States*, No. 16-20222, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020); *United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 CR. 513-3,

2020 1546422, at *4 (S.D.N.Y. Apr. 1, 2020). Prisoners with preexisting conditions may reasonably fear that their inability to follow recommended social distancing protocols can be life-threatening.

Readus argues that he is one such prisoner. He has four underlying conditions, none of which offer an expectation of recovery. First, his severe obesity puts him at heightened risk of illness from COVID-19. Readus is 5'9'' and 350 lbs. (ECF No. 22, PageId. 162, citing Presentence Report ¶ 43). This represents a body mass index of over 50. Though Readus is only 33 years old, the Center for Disease Control has opined that those with a body mass index of over 40 may be "at high risk for severe illness from COVID-19." CDC, "Groups at Higher Risk from Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Second Readus suffer from severe obstructive sleep apnea. (ECF No. 22, PageId.163, citing Presentence Report ¶ 44). He requires the use of Continuous Positive Airway Pressure while sleeping. He uses a BiPap machine since "other cellmates" told him that "he stops breathing in his sleep then he coughs and chokes to get his breathing back to normal." (ECF N0. 32-4, PageId.285). Such respiratory problems can only predict an adverse reaction to COVID-19. *See Saad*, 2020 WL 2251808, at *1.

Third, Readus suffers from hypertension. (ECF No. 34, PageId.313). Consistent with an emerging medical consensus, district courts have recognized that hypertension is a risk factor for COVID-19. *United States v. Sanders*, No. 19-cr-20288, ECF No. 35, PageId.202–203 (E.D. Mich. Apr. 17, 2020) (collecting cases).

Fourth, Readus suffers from prediabetes. (ECF No. 32-3, PageId.283; ECF No. 34, PageId.328). Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release. *United States v. Sosa*, No. 19-CR-39-02-JD, 2020 WL 2227038, at *1 (D.N.H. Apr. 21, 2020), *report and recommendation adopted*, 020 WL 2219173 (D.N.H. May 6, 2020) (finding prediabetes and obesity warranted pre-sentencing release); *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020) (granting temporary pretrial release and noting "the government does not contest that defendant suffers from prediabetes and hypertension, which puts him at higher risk for more severe, debilitating illness from COVID-19").

Readus is only 33 years old. His age alone precluded him from compassionate release under BOP rules. (ECF 32-5, PageId.286). Respondent argues that this Court should follow the same path. Section 3582(c), however, has no age cut-off. A court in this district recently ordered a 30-year-old inmate's compassionate release where he suffered from "congestive heart failure, diabetes mellitus (type two), asthma, obesity, and sleep apnea." *United States v. Hunt*, No. 18-20037, 2020 WL 2395222,

at *1 (E.D. Mich. May 12, 2020). Medical experts have repeatedly warned the country that youth is not an ironclad defense to COVID-19. *See* Paul Auwaerter, M.D., Johns Hopkins ABX Guide, Coronavirus COVID-19 https://www.hopkinsguides.com/hopkins/view/Johns_Hopkins_ABX_Guide/540747/all/Coronavirus_COVID_19__SARS_CoV_2_, (updated May 13, 2020) (finding that adults age 20-44 accounted for 20% of hospitalizations and 12% of ICU admissions); *see also United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7, n. 15 (S.D. Miss. May 1, 2020) (releasing a man younger than Readus and collecting sources on the danger COVID-19 poses to young people).

No inmates have tested positive for COVID-19 at FCI McKean. This fact is meaningless, however, for there is no evidence on the record that any inmates have been tested. "Zero confirmed COVID-19 cases is not the same thing as zero COVID-19 cases." *Amarrah*, 2020 WL 2220008 at *6 (citing Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federalprisons-have-coronavirus-11588252023.).

The Government emphasizes the assiduous measures the BOP is taking to stanch the spread of the coronavirus, including restrictions on visitors, mandatory quarantines, and rapid medical responses. These measures are good, but without testing FCI McKean cannot identify and isolate early outbreaks. Readus is at

heightened risk of COVID-19. Neither his age nor the lack of confirmed cases at FCI McKean diminish the extraordinary and compelling reasons for his release.

2. Danger to the Community

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Court already found, when it released Readus on bond pending trial, that Readus satisfied the § 3142(g) danger to the community factor, despite the fact that Readus was subject to a rebuttable presumption of detention. (ECF No. 14).

The Court found again, three years later, when ruling on his Motion for a Judicial Recommendation for Home Confinement, that Readus was not a danger to the community. (ECF No. 23, PageId.179). The Government has observed that fentanyl is a very dangerous drug to distribute and that Readus illegally possessed a firearm. It notes that Readus was denied transfer to home confinement because a predictive algorithm indicated that someone with his characteristics and criminal history may recidivate. Finally, it observes that Readus has received three disciplinary infractions in prison: written up for in prison, one of refusing to obey an order and two of being "insolent" to staff.

None of these arguments are persuasive. Readus has acknowledged that he has an anger management problem and has spoken about using his time in prison to

work on that problem. At 33-years-old he is past the age of hot-headed youth. Though he has done several stints in prison, starting when he was a teenager, the two years and seven months he's served in BOP custody has been several times longer than his earlier sentences, and the Court believes that he has learned from his time at FCI McKean. His prison infractions are minor and non-violent.

There is every indication that Readus has reached a turning point in his life. His BOP Progress report show that he works as an orderly and that his performance is satisfactory. (ECF No. 32-2, PageId.281). He paid his financial obligations, took classes in a GED program, and completed a life-skills course. (Id. at PageId.280-281). He. (*Id.*). His Summary Reentry Plan Progress Report concludes, "[h]is current institutional adjustment is rated as good. He is currently being considered for Residential Reentry Center placement." (*Id.*).

Upon his return to the community, Readus will be on supervised release. He has already demonstrated, while on bond, that he is capable of working with Court supervision. That supervision will continue, and, at least initially, Readus will be subject to home confinement. The expiration of any sentence involves a risk of danger, but the combination of Readus's growth at FCI McKean—combined with a restrictive term of supervised release—brings this risk to an extremely low level.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these factors is explicated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the May 18, 2020 hearing. Readus's crimes are serious, but his five-year sentence was meant to bring him to a place of maturity, not to put his health or life in jeopardy. The specific and general deterrence of similar criminal conduct was accomplished at the date of his original sentence. Neither Readus nor anyone else contemplating crimes such as is would gamble that another pandemic might arise and give him the opportunity to petition for

compassionate release. Finally, Readus's medical needs outweigh any additional benefits he would receive from spending another two years at FCI McKean. A sentence reduction to time-served is therefore in line with the § 3553(a) factors.

## CONCLUSION

The pandemic disrupted Readus's incarceration, as it disrupted much else. It should not disrupt his personal development, however. Readus is encouraged to take advantage of the resources offered by the United States Probation Department while on supervised release, and he is advised to abide by the public health precautions that have been in effect since March, that will be new to him.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Release from Custody under 18 U.S.C. § 3582(c)(1)(A)(i) (CORRECTED) [28] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's duplicative Motion for Release from Custody [26] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant's sentence of imprisonment be reduced to time served. Readus shall be released immediately following a 14-day quarantine.

**IT IS FURTHER ORDERED** that upon release Readus will begin his 48-month term **of SUPERVISED RELEASE**, as outlined by the September 14, 2017 Judgment. (ECF No. 21). Defendant's Special Conditions of Supervised Release are

**MODIFIED** to provide that Readus shall fully comply with any applicable state stay-at-home orders or public health restrictions.

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: May 21, 2020 | Senior United States District Judge |